

*COMPOSITE EXHIBIT "A"*

Filing # 122241735 E-Filed 03/01/2021 01:30:22 PM

IN THE CIRCUIT COURT FOR THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

TERATECH USA, INC.,

    Plaintiff,

v.                CASE NO.:

DIGITAL BEAUTY GROUP, LLC,

    Defendant.

_____/

## COMPLAINT

Plaintiff, TERATECH USA, INC., by and through its undersigned attorney, sues Defendant, DIGITAL BEAUTY GROUP, LLC, and states as follows:

### Jurisdiction and Parties

1.     Plaintiff, TERATECH USA, INC., hereinafter sometimes referred to as TERATECH is a corporation organized and existing under and by virtue of the laws of the State of California with its principal place of business located at 4030 N. Palm Street, #303, Fullerton, CA 92835.

2.     Defendant, DIGITAL BEAUTY GROUP, LLC, hereinafter sometimes referred to as DBG is a Florida Limited Liability Company with its principal place of business at 340 Royal Poinciana Way, Suite 317-356, Palm Beach, Palm Beach County, Florida 33480.

3.     This is an action for damages which exceed $30,000.00.

4.     Venue is proper in Palm Beach County, Florida because it is where Defendant's principal place of business is located.

## Underlying Facts

5.      At all times material hereto, Defendant, DBG, was acting through its employees, agents, servants and/or contractors, each of whom was acting within the course and scope of their actual or apparent authority.

6.      Plaintiff, TERATECH, paid $500,000.00 to DBG on or about June 19, 2020, and purchased DBG's "Admire My Skin" products, hereinafter sometimes referred to as "AMS Products," which TERATECH received in July of 2020, and Plaintiff demanded refund of $500,000.00 paid to DBG on or about September 21, 2020, because AMS Products were unmerchantable.

7.      Mr. Josh Kim contacted DBG to import AMS Products into South Korea for PPW Korea to distribute AMS products in South Korea and other Asians countries.

8.      PPW Korea contracted with DBG to be the exclusive distributor of AMS Products in South Korea and many countries in Asia. A true and correct copy of the Digital Beauty Group LLC Authorized Distribution Terms of Sale and the First Amendment to Digital Beauty Group LLC Authorized Distributor Terms of Sale are attached as Exhibit "A."

9.      DBG breached the exclusive distributor rights to PPW Korea by directly selling via Amazon AMS Products into the countries that PPW Korea had exclusive distributor rights.

10.     On or about April 23, 2020, Mr. Josh Kim, requested from Defendant, DBG, the documents needed to register AMS Products to Korean Food and Drugs Administration hereinafter sometimes referred to as KFDA, and explained to DBG that KFDA approval is necessary to make the AMS Products merchantable.

11.     On or about June 2, 2020, Mr. Josh Kim reported to Defendant, DBG, the issue of leaking caps of the 2% Ultra Potent Hydroquinone AMS Products.

12.     On or about June 3, 2020, Mr. Josh Kim again asked Mr. Richard Craig Romero, CEO of DBG, the documents needed for the registration of AMS Products, and explained that AMS Products cannot be merchantable without the proper registration with KFDA.

13.     On or about June 4, 2020, Mr. Josh Kim asked Defendant, DBG, to change the buyer information in the invoice from PPW Korea to Teratech USA.

14.     On or about June 19, 2020, Plaintiff, TERATECH, wire transferred $500,000.00 to Defendant, DBG, to purchase AMS Products to resell the products in South Korea and other Asians countries PPW Korea had contracted with DBG as the exclusive distributor.

15.     On or about June 25, 2020, Mr. Richard Craig Romero, CEO of DBG, emailed to Mr. Josh Kim that DBG will have 25,000 units of 2% Hydroquinone ready to ship on the week of July 6th and will begin shipping the remaining 75,000 units on the week of August 10th, and the other products should start to ship partials in the first week of August.

16.     On or about July 2, 2020, Mr. Richard Craig Romero, CEO of DBG, notified Mr. Josh Kim that he had notified the bottle supplier of the leak issue.

17.     On or about July 6, 2020, Mr. Josh Kim asked for a new Certificate of Free Sale with Teratech Korea as importer rather than PPW Korea, and Mr. Craig Romero, CEO of DBG, sent Mr. Josh Kim another Certificate of Free Sale D20-0609-0101, dated June 9, 2020.

18.     However, instead of sending a new Certificate of Free Sale with Teratech Korea as the importer, the Certificate of Free Sale D20-0609-0101, dated June 9, 2020, from Florida Chamber of Commerce was counterfeited by changing the name of the company from PPW Korea Co. LTD to Teratech Korea as importer to South Korea, and it had not been reissued by the Florida Chamber of Commerce.

19.     On or about July 9, 2020,  Mr. Richard Craig Romero, CEO of DBG, emailed to Mr. Josh Kim that he will work on getting wet signature on the documents, and work on the leaking bottle caps issue.

20.     Defendant, DBG, delivered to Plaintiff, TERATECH, the following AMS Products: 25,000 units of 2% Hyroquinone Serum on or about July 17, 2020; and 18,000 units of Citrus Glow Drops-Vitamin C Facial Oil on or about July 28, 2020.

21.     However, the shipping packages were damaged; the expiration dates on the individual boxes did not match the individual bottles of the 2% Hydroquinone Serum, which made them unmerchantable; the caps on the 25,000 units of 2% Hydroquinone Serum leaked and made them unmerchantable; and the 18,000 units of Citrus Vitamin Drop were unmerchantable because they did not have any expiration date on the container, which KFDA required.

22.     Yebong International Corp., which registers products to KFDA, determined TERATECH cannot be certified by KFDA for the import permit of AMS Products because KFDA has determined the Document the Certificate of Free Sale D20-0609-0101, dated June 9, 2020, from Florida Chamber of Commerce was forged; and Yebong International Corp. found that there are discrepancy in two different expiration dates specified on the container and on inbox for the container of Ultra Potent Brightening Serum 2% Hydroquinone, and Citrus Glow Drops did not have expiration date on the container itself.  A true and correct copy of Yebong International Corp's letter stating KFDA has determined forged document and the expiration dates issue made KFDA reject the AMS products in English Translation and Korean is attached as Exhibit "B."

## COUNT I - BREACH OF WARRANTY

23.     This is an action for breach of warranty for damages which exceed $30,000.00 exclusive of interest, costs, and attorney's fees..

24.     The averments contained in paragraphs one (1) through twenty-two (22) are incorporated herein by reference as if set forth in their entirety.

25.     DBG is liable for delivering unmarketable products in violation of Florida Statute §672.314 by sending counterfeit document, which resulted in banning TERATECH from applying for certification of DBG's AMS products to KFDA; the Citrus Glow drops without any expiration date on the container as required cannot be used for the certification with KFDA; and 2% Hyroquinone Serum with leaking caps and mismatching expiration dates on each individual boxes and the bottles inside the individual boxes cannot be used for the certification with KFDA.

26.     Plaintiff, TERATECH, has paid $500,000.00 to DBG on or about June 19, 2020, and purchased DBG's AMS Products, which were unmerchantable in violation of Florida Statute §672.314.

27.     Florida Statute §672.314 (1) states "Unless excluded or modified (s. 672.316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind…"'

28.     Further, Florida Statute §672.314 (2) states "Goods to be merchantable must be at least such as … ( c) Are fit for ordinary purposes for which such good are used; and … (e) Are adequately contained, packaged, and labeled as agreement may requires; and (f) Conform to the promises or affirmations of fact made on the container or label if any."

29.     AMS Products failed to be merchantable in violation of §672.314.

30.     Yebong International Corp, which registers products to KFDA, could not register AMS Products for TERATECH to KFDA for the import permit because a) KFDA has determined the Document the Certificate of Free Sale D20-0609-0101, dated June 9, 2020, from the Florida Chamber of Commerce was forged and banned TERATECH; b) there are discrepancy in two different expiration dates specified on the container and on in box for the container of Ultra

Potent Brightening Serum 2% Hydroquinone AMS product; and c) Citrus Glow Drops AMS products have no expiration date on the container.

31.     Thus, Defendant's, DBG, AMS Products that were delivered to Plaintiff, TERATECH, were unmerchantable.

32.     DBG's failure to provide merchantable products to TERATECH resulted in worthless products for TERATECH after paying $500,000.00 to DBG.

33.     Plaintiff has been damaged by Defendant's breach of its warranty.

34.     The nature and extent of Plaintiff's damages include, without limitation, any amounts paid by Plaintiff, TERATECH USA, to Defendant, DBG, in conjunction with the purchase of DBG's AMS products.

WHEREFORE Plaintiff, TERATECH USA, INC., demands judgment against Defendant, DIGITAL BEAUTY GROUP, LLC, for damages, costs, and interest.

## COUNT II - REVOCATION OF ACCEPTANCE

35.     This is an action to revoke acceptance of the DBG's AMS products delivered to TERATECH and for damages, which exceed $30,000.00, exclusive of interest, attorney's fees, and costs, pursuant to §672.608, Florida Statutes.

36.     The averments contained in paragraphs one (1) through twenty-two (22) are incorporated herein by reference as if set forth in their entirety.

37.     Prior to the institution of this litigation, Plaintiff timely revoked acceptance of the the DBG's AMS products pursuant to §672.608, Florida Statutes.

38.     Defendant, DBG, delivered to Plaintiff, TERATECH, 25,000 units of 2% Hyroquinone Serum on or about July 17, 2020.

39.     Defendant, DBG, delivered to Plaintiff, TERATECH, 18,000 units of Citrus Glow Drops-Vitamin C Facial Oil on or about July 28, 2020.

40.     Plaintiff timely revoked acceptance of the the DBG's AMS products, and demanded return of $500,000 on or about September 21, 2020.

41.     The basis for revocation of acceptance is DBG's delivery of unmerchantable AMS products.

42.     Notwithstanding Plaintiff's revocation of acceptance, DBG has failed, refused, and been unable to:

     (a)     Return the monies paid by Plaintiff to DBG; and

     (b)     Cancel the transaction and return the parties to status quo.

43.     Plaintiff revoked acceptance of DBG's AMS products in a timely and reasonable manner.

WHEREFORE Plaintiff, TERATECH USA, INC. revokes acceptance and demands judgment against Defendant, DIGITAL BEAUTY GROUP, LLC for cancellation, and for any and all damages which may be assessed against Defendant, together with interest, costs, and attorney's fees.

## COUNT III - FRAUD

44.     This is an action based on fraud in the inducement seeking damages which exceed $30,000.00, exclusive of interest, attorney's fees, and costs.

45.     The averments contained in paragraphs one (1) through twenty-two (22) are incorporated herein by reference as if set forth in their entirety.

46.     The oral statements, representations, assurances and omissions set forth in the General Allegations of this Complaint made and/or omitted by Defendant, DBG, to Plaintiff, TERATECH, prior to, contemporaneously with, and in conjunction with the negotiations for purchase of the vehicle were intentionally or recklessly false and untruthful.

47.      Defendant, DBG, intentionally, egregiously, maliciously, fraudulently and/or recklessly represented to Plaintiff, TERATECH, that it would provide necessary documents for KFDA to approve AMS Products, and resolve 2% Hyroquinone Serum with leaking caps issues.

48.      However, DBG provided counterfeit Certificate of Free Sales, delivered Citrus Glow drops with the packaging without the expiration date; and delivered 2% Hyroquinone Serum with leaking caps and mismatching expiration dates on each individual boxes and the bottles inside the individual boxes, which resulted in KFDA to reject TERATECH's permit application and banned TERATECH.

49.      On or about  July 6, 2020, Mr. Josh Kim asked for a new Certificate of Free Sale with Teratech Korea as importer not PPW Korea to Defendant, DBG.

50.      Mr. Craig Romero, CEO of DBG, sent Mr. Josh Kim a new Certificate of Free Sale.

51.      However, DBG provided counter Certificate of Free Sale, which was counterfeited by changing name of the company from "PPW Korea" to "Teratech Korea" and it had not been reissued by the Florida Chamber of Commerce.

52.      On or about July 9, 2020,  Mr. Craig Romero, CEO of DBG, emailed that he will work on getting wet signature on the documents.

53.      Further,  Mr. Craig Romero, CEO of DBG emailed that he will work on the leaking bottle caps, and will send 25,000 bottles if the leak issue is solved.

54.      However, the 25,000 bottles delivered to TERATECH still leaked and were not merchantable.

55.      Further, DBG delivered Citrus Glow drops without the expiration date on the packaging; and delivered 2% Hyroquinone Serum with leaking caps and mismatching expiration dates on each individual boxes and the bottles inside the individual boxes.

56.     The aforesaid statements, representations, assurances and/or omissions were intentional or reckless misrepresentations and/or omissions of existing or past material fact.

57.     Alternatively, the aforesaid statements, representations, assurances and/or omissions were intentional or reckless misrepresentations as to future acts which Defendant, DBG, knew to be false and untrue at the time the same were made.

58.     The false representations and material omissions of fact were without legal excuse or justification, were premeditated and committed with actual knowledge and/or such reckless indifference to the rights of Plaintiff and to the consequences of DBG's actions, statements and/or omissions as to be willful, reckless indifference to the truth or falsity of the statements, representations, assurances and/or omissions made or omitted.

59.     Plaintiff justifiably and reasonably relied to its detriment upon the false oral statements and representations made by DBG to Plaintiff.

60.     As a direct result of DBG's fraud in the inducement and fraudulent misrepresentations and omissions, Plaintiff has incurred and sustained damages.  The nature and extent of Plaintiff's damages include, without limitation, the amount, $500,000.00, paid by Plaintiff to DBG in conjunction with the purchase of AMS Products, and approximately $264,000 TERATECH spent in marketing and trying to obtain permit from KFDA to sell AMS Products.

61.     Plaintiff has retained the undersigned attorney to represent its interests in this matter and is obligated to paid said attorney a reasonable fee for services rendered.

62.     Plaintiff is entitled to attorney's fees based upon Florida case law awarding attorney's fees in fraud actions where the fraud is specific, certain and conclusive.

63.     The fraud perpetuated upon Plaintiff in this instance by DBG was specific, certain and conclusive.

64.     Plaintiff is entitled to attorney's fees pursuant to the "inequitable conduct doctrine."  *See Bitterman v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998).

65.     Further, Plaintiff reserves right to claim for punitive damages against Defendant.

WHEREFORE, Plaintiff, TERATECH USA, INC., demands judgment for damages against Defendant, DIGITAL BEAUTY GROUP, LLC, a Florida limited liability company, together with interest, costs, and attorney's fees.

## COUNT IV - NEGLIGENT MISREPRESENTATION

66.     This is an action, based upon negligent misrepresentation, for actual damages which exceed $30,000.00, exclusive of interest, costs, and attorney's fees.

67.     The averments contained in paragraphs one (1) through twenty-two (22) are incorporated herein as if set forth in their entirety.

68.     Plaintiff realleges the allegations contained in Count III for fraud, except that the aforesaid representations, assurances, affirmations, omissions and material misstatements of past, existing or future facts or acts made or omitted to Plaintiff were not intentionally made, but were negligent and reckless.

69.     The representations, statements, assurances and/or omissions were made or omitted with a negligent and/or reckless indifference to the consequence of DBG's actions, statements and omissions, and in negligent and/or reckless indifference to the truth or falsity of the representations, assurances, statements and/or omissions.

70.     DBG's conduct, actions, representations and omissions constitute negligent misrepresentation.

71.     DBG knew, or should have known, that the representations and omissions were false and untrue at the time the same were made or omitted.

72.     Said statements, affirmations, omissions and/or representations were made or omitted expressly for the purpose of inducing Plaintiff to purchase AMS Products.

73.     DBG as a merchant in beauty products owed Plaintiff a duty to properly and accurately represent the condition of the beauty products purchased by Plaintiff.

74.     DBG breached its duty to Plaintiff with respect to the statements made by the representative of DBG to Plaintiff as more specifically set forth above.

75.     DBG's misrepresentations, statements, assurances and/or omissions made and/or omitted to Plaintiff were false when made and/or omitted and should have been known to be false when the same were made or omitted.

76.     As a direct and proximate result of DBG's negligent misrepresentation and/or omission, Plaintiff has suffered and incurred damages.

77.     The nature and extent of Plaintiff's damages include, without limitation, any amounts paid by Plaintiff to DBG in conjunction with the purchase of AMS Products, amounts Plaintiff, TERATECH, spent in marketing and trying to obtain permit from KFDA to sell AMS Products.

WHEREFORE Plaintiff TERATECH USA, INC., demands judgment against Defendant, DIGITAL BEAUTY GROUP, LLC, for actual damages together with interest, costs, and attorney's fees.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE

Dated this March 1 , 2021.

Min H. So
Florida Bar No.:  0021822
Min H. So Law Firm, P.A.
5401 S. Kirkman Road, Suite 310
Orlando, FL 32819
Telephone: (407)370-7140
Facsimile: (407)370-3353
Email: MIN@MINSOLAW.COM
Attorney for Plaintiff, Teratech USA, Inc.

**DIGITAL BEAUTY GROUP LLC**
**AUTHORIZED DISTRIBUTOR**
**TERMS OF SALE**

This Authorized Distributor Terms of Sale, together with any addendums, amendments, exhibits, and purchase orders (collectively, the **"Terms"** or **"Agreement"**), is effective as of 1/30/2020 (the **"Effective Date"**) by and between Digital Beauty Group LLC (**"Company"**) located at 340 Royal Poinciana Way 317-356, Palm Beach, FL 33480 and PPW Korea (**"Distributor"**) located at 4030 N. Palm St., #303, Fullerton, CA 92835. Company and Distributor are each referred to herein individually as a **"Party"** and collectively as the **"Parties."**

1) <u>**Products**</u>. This Agreement authorizes Distributor to sell genuine products of Company (the **"Products"**), including without limitation Company's Brightening Serum, to sub-distributors or **"Resellers"** of the Products, which Resellers in turn sell the Products to end users.

2) <u>**Appointment of Distributor; Resellers**</u>.

    a) <u>Appointment</u>. Company hereby appoints Distributor as an authorized, independent distributor of the Products in the Territory, as defined below, on a non-exclusive basis, and Distributor hereby accepts said appointment. Subject to this appointment, Distributor has the right to purchase Products from Company and market, offer for sale, sell and distribute such Products to Resellers in the authorized sales Territory.

        i) <u>Exclusivity</u> – Distributor may earn the right to have an exclusive Territory at Company's sole discretion based upon performance by Distributor in the first year of this agreement. Until exclusivity is granted, Company will reasonably limit, in its sole discretion, the number of other distributors in the Territory and will notify Distributor of any new distributors in the defined Territory.

        ii) <u>Right of First Refusal</u> – Company will allow Distributor the Right of First Refusal should another distributor request rights within the Territory. Company shall provide Distributor with written notice (including by email) of the potential distributor and the sales and relationships promised by said potential distributor. Distributor shall have fourteen (14) days after receipt of such notice to provide evidence satisfactory to Company, in its sole discretion, that Distributor can deliver the same sales and relationships, in which event, Company will deny rights to the potential distributor. If Distributor fails to deliver on the promised sales and relationships within ninety (90) days after the denial, then Company may revisit the relationship with the denied distributor without granting further right of first refusal or other rights to Distributor.

    b) <u>Privity</u>. The relationship hereby established between Company and Distributor during the effective period of This Agreement shall be solely between Company and Distributor and Distributor has no authority to  assume or create any obligation of any kind in the name, or on behalf, of Company.

    c) <u>Territory</u>. The authorized sales territory of Distributor under This Agreement (the **"Territory"**) shall be current and future Topiderm white label sales customers.

    d) <u>Internet Sales.</u> Distributor and Resellers may sell the Products via Internet, but only through sales originated by Authorized Websites, as defined in Section 5(a) below and to be shipped to a location within their designated Territory. Distributor may not sell the Products through any Internet-based

Distributor Terms

Exhibit A

marketplaces, including but not limited to, Amazon, Ebay, or similar programs. Distributor's appointment and authorization from Company to distribute the Products is expressly limited to the Territory. The Territory includes each of the following Reseller sales venues: Reseller's brick-and-mortar stores and Authorized Websites as set forth in Section 5(a) below. The Territory expressly <u>excludes</u> all websites other than the Authorized Websites, such as Amazon, eBay, or any other Internet marketplace storefront, except as expressly provided herein. Distributor understands and agrees that it is Distributor's sole responsibility to ensure that each Reseller is aware of the limitations of the Territory and does not sell or offer the Products for sale outside the Territory.

e) <u>Resellers.</u>

   i) <u>Prohibited Resellers.</u> At its sole discretion, and for any reason or no reason at all, Company may prohibit the sale of Products to a certain Reseller or category of Resellers; provided, however, that if Company makes such a prohibition, it will apply to Distributor, all other distributors within the Territory, and to Company alike. Notwithstanding the foregoing, nothing in this Agreement shall prohibit Company from continuing to sell to Resellers with which Company had a business relationship that predates this Agreement.

   ii) <u>Distributor's Duty to Provide Agreement to Reseller.</u> Distributor understands and agrees that it is Distributor's sole responsibility to ensure that each Reseller is aware of, has agreed in writing to comply with, and has, in fact, complied with the complete provisions of this Agreement, including without limitation the representations, warranties, and restrictions herein. Before providing any Products to Reseller, Distributor will enter into a written agreement with Reseller that (a) attaches a copy of these Terms (exclusive of the Price List, as defined below) and (b) incorporates all provisions of these Terms by reference. Company shall be expressly designated a third-party beneficiary of the Distributor-Reseller agreement and shall have the ability to take legal action against Reseller thereunder. Distributor will provide a copy of its agreement with Reseller to Company upon Company's request. Any breach by Reseller of the terms of this Agreement shall be deemed to be a breach by Distributor.

   iii) <u>Distributor's Indemnification of Reseller's Acts.</u> As set forth below in Section 10(b), Distributor shall indemnify and hold harmless Company against all claims, damages, expenses, costs, losses, or fees incurred as a result of the actions or omissions of Reseller in violation of this Agreement, the Distributor-Reseller agreement, or any applicable law.

3) <u>**Sale of Products, Price and Terms.**</u>

   a) <u>Distributor Pricing.</u> Company will set the "**Distributor Price**" for each Product in the "**Price List**" attached hereto as Exhibit A. Company shall have the right, from time to time, at its sole discretion, to change the Distributor Price upon thirty (30) days' written notice to Distributor. In such instance, Company shall issue a new Price List to Distributor reflecting such change, which shall, as of the effective date stated thereon, supersede the prior Price List. Any Products ordered by Distributor prior to or during the 30-day notification period will be invoiced in accordance with the then-current DistributorPrice.

      (i) Availability of Distributor Pricing is granted to Distributor specifically for the purpose of reselling Company products to its Reseller customers. Direct to consumer sales by Distributor are specifically precluded by this agreement.

b) <u>Minimum Advertised Pricing</u>. Except where prohibited by law, Company will set the **"Minimum Advertised Price"** ("MAP") for each Product in the Price List. Company shall have the right, from time to time, at its sole discretion, to change the MAP upon thirty (30) days' written notice to Distributor.

In such instance, Company shall issue a new Price List to Distributor reflecting such change, which shall, as of the effective date stated thereon, supersede the prior Price List; provided, however, that Distributor shall be able to promote any Products ordered by Distributor prior to the notification at the then-current MAP. Distributor understands and agrees that it is Distributor's sole responsibility to ensure that each Reseller is aware of the current MAP and does not promote the product for less than the MAP.

c) <u>Orders</u>. Company will sell to Distributor such quantities of the Products as Distributor reasonably requests pursuant to a written purchase order (each, an **"Order"**) submitted to Company by email at sales@admiremyskin.com or by placing an order via the Company's wholesale website at https://admiremyskin.com.

    (i) Company hereby expressly rejects any and all different, conflicting, or additional terms appearing on any Order or any other document from Distributor, and such terms will have no force or effect, either through acceptance of such Order by Company in writing. Company reserves the right to establish minimum quantity requirements for Orders, which shall be provided to Distributor via the Price List. Company reserves the right to fill purchase orders based on stock availability and the distributor complying with the terms of this agreement.

d) <u>Payment</u>. A deposit of 50% of the total cost of the Order will be required at time of Order with the balance of payment due prior to release of shipment. Orders will not be considered properly received and accepted by Company until the required deposit is received. The deposit becomes non-refundable once Company has taken any material action towards fulfilling the Order.

e) <u>Delivery</u>. Company will use commercially reasonable efforts to deliver Products as set forth in each applicable Order accepted by Company within a reasonable time period after Company's receipt of full payment from Distributor for the Order, including shipping charges.

f) <u>Shipping</u>. Company will ship orders to the Distributor's local Freight Forwarder. Distributor is responsible for shipping to its geographic territory along with all related duties and tariffs.

g) <u>International Shipments</u>. Customs tax and duties assessed by foreign governments are the sole responsibility of Distributor. Company shipping charges do not include these fees. Distributor acknowledges and agrees to pay all taxes and duties for shipments outside of the United States.

h) <u>Taxes</u>. All prices set forth in the Price List are exclusive of, and Distributor is responsible for and will indemnify Company from and against, all taxes, charges, fees, levies, imposts, duties, tariffs or other assessments imposed by or payable to any federal, state, local or foreign tax or governmental authority, including without limitation sales, use, goods, services, value added, transfer, customs, personal property, stamp duty, excise, withholding and other obligations of the same or similar nature (individually   and   collectively, **"Taxes"**); provided, however, that Distributor will not be responsible for any Taxes due on the net income of Company. If required in the jurisdiction where Distributor is located,

Distributor Terms

3

Distributor represents and warrants that it has obtained and will maintain a valid Distributor's license or permit and Distributor will furnish a copy of the same to Company upon request.

4) <u>**Intellectual Property**</u>.

   a) <u>Ownership</u>. ADMIRE MY SKIN, the Admire My Skin logo, and all other trademarks, service marks, graphics, logos and domain names appearing on the Products (collectively, the "**Marks**") are trademarks or registered trademarks of Admire My Skin, LLC. Neither the authorization granted herein nor Distributor's or Reseller's distribution or sale of the Products grant Distributor or Reseller any right, title or interest in or to, or any license to reproduce or otherwise use, the Marks, except as expressly stated herein. Distributor agrees that any goodwill in the Marks generated as a result of Distributor's sale of the Products will inure to the benefit of Company and Distributor agrees to assign, and hereby does assign, all such goodwill to Company. Distributor shall not at any time, nor shall it assist others, including any Reseller, to, challenge Company's rights, title, or interest in or to, or the validity of, the Marks.

   b) <u>License to Marks</u>. Company hereby grants to Distributor and its Resellers a non-exclusive, non-sublicensable, revocable as stated herein, non-transferable license to use the Marks to display, market, and sell the Products in the performance of Distributor's rights and obligations under This Agreement. Distributor and Reseller will not attach any additional trademarks or trade names to or for the Products. The license granted herein does <u>not</u> extend to, and Distributor, on behalf of itself and its Resellers, agrees it will <u>not</u> engage in, either directly or indirectly, the bidding on Marks as pay-per-click Internet advertising terms. Distributor will immediately change or discontinue any use of the Marks as requested by Company. Distributor understands and agrees that it is Distributor's sole responsibility to ensure that each Reseller is aware of the complete terms of this Agreement, including this license, and will abide by the restrictions therein.

5) <u>**Internet Sales and Marketing**</u>.

   a) <u>Authorized Websites</u>. Distributor's Reseller may offer the Products for sale on its own websites to be shipped to locations inside the Territory ("**Authorized Websites**") in accordance with the terms of this Agreement, including without limitation the Minimum Retail Price. Distributor and Reseller will <u>not</u> offer any of the Products for sale in Reseller's Distributor's or Reseller's Amazon Storefront or any other Internet marketplace, including without limitation eBay, Walmart marketplace, Shopee, Alibaba, and so forth. Reseller may use the Marks on the Authorized Websites to display and promote the Products, but may not use the Marks, or anything substantially similar thereto, in the domain name of any website. Distributor and Reseller will <u>not</u> sell the Products through any Internet website other than the Authorized Websites without the prior written approval of Company as obtained through Distributor. The limitation of sales to Authorized Websites is intended and reasonably necessary to protect Company's Marks and end consumers against counterfeiting or unauthorized sales.

   b) <u>No Subscription Sales</u>. Unless expressly approved in writing by Company pursuant to an application and showing of appropriate insurance coverage by Reseller, Reseller will <u>not</u> offer any Products for sale on the Internet on a subscription, continuity, membership, negative option, or rebilling basis where a single Internet transaction by the consumer results in multiple payments by and/or shipments of the Products to the consumer at periodic intervals.

Distributor Terms                                                                                             4

c) <u>Internet Advertising; No Affiliate Advertising</u>. Distributor and Reseller may use the Marks in "**Internet Advertising**," whether paid (such as Google Ads, banner ads, etc.) or unpaid (such as a blog giveaway), to promote the sale of the Products by Reseller through the Authorized Websites and Reseller's brick-and-mortar locations, if any, <u>so long as said Internet Advertising is placed directly by Reseller</u>; provided, however, that Distributor and Reseller will not engage in, either directly or indirectly, the bidding on Marks as pay-per-click Internet Advertising terms. Reseller will <u>not</u> engage the services of any third-party ad networks or affiliate networks to place Internet Advertising for the Products on its behalf. To the extent Reseller is unsure if a particular method of Internet Advertising is prohibited by this subsection, Reseller will obtain the prior written approval of Company through Distributor.

d) <u>Compliance in Advertising</u>. With regard to its Internet Advertising and sales, Distributor and Reseller will <u>not</u> violate any applicable foreign or domestic, federal, state or local statutes, laws, ordinances, rules and regulations, or industry standards, including without limitation, the FTC Act, all FTC rules, regulations and guidelines, and applicable credit card association merchant guidelines. Distributor and Reseller each represent and warrant that all Internet Advertising content: (i) does not infringe the rights including without limitation the copyright, patent, trademark, trade secret, and/or other proprietary rights, of any third party; (ii) is not false, misleading, fraudulent or deceptive, use false claims, testimonials, endorsements, or any similar content, use fake blogs ("flogs"), news sites or similar content, promise that use of the product will result in looking "X years younger," or advertise a discount, trial, or free offer without clearly and conspicuously displaying the terms of the offer; (iii) is not libelous or defamatory or violative of the privacy or publicity rights of any third party; (iv) does not consist of or contain viruses, Trojan horses, worms, malicious code, or other harmful or destructive content; (v) is not obscene, lewd, lascivious, filthy, or pornographic; (vi) does not depict a health condition in a derogatory or inflammatory way or misrepresent a health condition in any way; and (vii) does not harvest or otherwise collect information about consumers.

e) <u>No Email or SMS Advertising</u>. Reseller will <u>not</u>, either directly or indirectly, advertise the Products via email message or SMS/text message.

f) <u>Compliance with FTC's Endorsement Guidelines</u>. Regardless of the jurisdiction in which Reseller or the Territory are located, Reseller will <u>not</u>, either directly or indirectly, advertise the Products in violation of the FTC's Endorsement Guidelines, including the "Disclosures 101 for Social Media Influencers", which is available at https://www.ftc.gov/system/files/documents/plain-language/1001a-influencer-guide-508_1.pdf. Reseller shall be responsible for overseeing compliance with the Endorsement Guidelines by all influencers or other marketers hired by Reseller to promote the Products.

g) <u>Product Compliance.</u> Company disclaims all warranty or guarantee that the Products, or ingredients thereof, are lawful to sell in the Territory. Distributor and Reseller are in the best position to ascertain the legality of the Products within the Territory, and Distributor, on behalf of itself and Reseller, represents and warrants that the Products shall only be sold in a lawful and compliant manner within the Territory.

6) **Relationship of the Parties**. The relationship of the Parties under these Terms is one of independent contractors and nothing herein should be construed to constitute the parties as partners, joint ventures, agent and principal, or employer and employee. Nothing herein will give either Party any

right or authority to bind the other, and neither Party will bind the other to any obligation to any third party. These Terms will be binding upon and will inure to the benefit of the parties, their successors, and permitted assigns.

a) <u>Use of Name.</u>  Distributor may not use the name Admire My Skin as any part of its company name, website name, or social media account name.  Distributor may promote the name Admire My Skin on its website or other company sales materials via direct name, reference or link to our social media as expressly permitted above in Section 4.

7) **Warranties and Disclaimers**.

   a) <u>Warranties</u>. Distributor will make no warranties with respect to the Products that exceed the express warranties made by Company.

   b) <u>Remedies</u>. Company's sole obligation, and Distributor's sole remedy, with respect to any Products that do not conform to the express warranties made by Company  will be to repair or replace the Products. Distributor will be responsible for the costs of shipment to return defective Products to Company. Company will be responsible for the costs of shipment of repaired Products to Distributor.

   c) <u>Disclaimer</u>. THE EXPRESS WARRANTIES PROVIDED IN THE DOCUMENTATION INCLUDED WITH EACH PRODUCT ARE IN LIEU OF (AND COMPANY HEREBY DISLCAIMS) ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY OF MERCHANTABILITY, TITLE, NON-INFRINGEMENT OR FITNESS FOR A PARTICULAR PURPOSE OR USE. Company reserves the right to change warranty terms at its sole discretion during the Term of these Terms; provided, however, that any change will not affect Company's obligations  with respect to Products sold to Distributor under a previous warranty.

8) **Term and Termination.** Notwithstanding anything to the contrary in this Agreement, Company may terminate its authorization to Distributor for any reason or with no reason at all at any time upon thirty (30) days' written notice to Distributor. Upon termination, Distributor will no longer have the right to act as Company's Distributor; provided, however, that Distributor will have the right to continue selling those Products in Distributor's inventory at the time of termination for a period not to exceed thirty (30) days from the date of such termination; provided further, however, that Distributor will, if Company so requests in writing, sell to Company all or any part of such unsold Products in Distributor's inventory at the Wholesale Price for which Distributor purchased the Products. If Company determines that Distributor or its Reseller is in material breach of any provision in this Agreement, then Company may immediately terminate this Agreement upon written notice of the same to Distributor, including by email, and in such event, Distributor shall have no right to sell its inventory. Upon termination, Distributor will cease all advertising, promotion and marketing of the Products and all use of the Company Marks and will promptly return to company all Confidential Information and other materials belonging to Company, or will destroy the same upon Company's request.

9) **Confidential Information.** Each Party agrees to use the other Party's Confidential Information solely for the purposes contemplated by these Terms, and to refrain from disclosing the other Party's Confidential Information to  any third-party, unless (a) any disclosure is necessary and permitted in connection with the receiving party's performance of its obligations or exercise of its rights under This Agreement or any other agreement between the Parties; (b) any disclosure is required by applicable law; provided, that the receiving party uses reasonable efforts to give the disclosing party reasonable advance notice thereof so as to afford the disclosing party an opportunity to intervene and seek an order or other appropriate relief for the protection of its Confidential

Information from any unauthorized use or disclosure; or (c) any disclosure is made with the consent of the disclosing party. For purposes of This Agreement **"Confidential Information"** includes, without limitation, the terms of This Agreement, the Price List and all modifications thereto, Product formulations and production techniques, and information regarding any existing or contemplated services, products, processes, techniques, or know-how or either Party. Confidential Information does not include: (i) information already in the public domain at the time the information is acquired by the receiving Party; (ii) information that subsequently becomes public through no act or omission of the receiving Party; or (iii) information that has been supplied to the receiving Party without restriction by a third party who is under no obligation to the disclosing party to maintain such information in confidence.

10) <u>Indemnification</u>.

    a)   <u>By Company</u>. Company will indemnify, defend and hold harmless Distributor and its directors, officers and employees from any claim, loss, liability, damage, cost or expense (including without limitation, reasonable attorneys' fees) in which the claimant contends that any defects in the design or manufacture of the Products is the proximate cause of any injury.

    b)   <u>By Distributor</u>. Distributor will indemnify, defend and hold harmless Company and its directors, officers and employees from any claim, loss, liability, damage, cost or expense (including without limitation, reasonable attorneys' fees) arising out of (i) Distributor's or Reseller's marketing or sale of the Product; (ii) any willful or negligent act or omission of Distributor or Reseller; (iii) any breach of these Terms by Distributor or Reseller; (iv) any violation or alleged violation of any applicable foreign or domestic, federal, state, or local statutes, laws, ordinances, rules and regulations or industry standards, including without limitation the FTC Act and applicable credit card merchant guidelines by Distributor or Reseller; (v) any claim or false or misleading advertising by Distributor or Reseller; and/or (vi) any violation or alleged violation by Distributor or Reseller of the rights of any third party.

    c)   <u>Procedure</u>. The Indemnitee will provide Indemnitor with prompt written notice of the Claim for which the Indemnitee intends to claim such indemnification, and Indemnitor shall have the right to participate in; and, to the extent the Indemnitor so desires, to assume sole control of the defense thereof with counsel selected by the Indemnitor; provided, however, and notwithstanding the foregoing, that the Indemnitee shall have the absolute right to retain their own counsel, with the fees and expenses to be paid by the Indemnitee. Indemnitor will have no authority to settle any Claim on the Indemnitee's behalf without the written consent of the Indemnitee. Nothing in this Section shall limit any other remedy of the parties. These obligations will survive any termination of the Terms.

11) <u>Limitation of Liability.</u> THE LIABILITY OF COMPANY AND ITS LICENSORS AND SUPPLIERS IS LIMITED. TO THE MAXIMUM EXTENT PERMITTED BY LAW, IN NO EVENT SHALL COMPANY OR ITS LICENSORS, OR SUPPLIERS BE LIABLE FOR SPECIAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES, LOST PROFITS, LOST DATA OR CONFIDENTIAL OR OTHER INFORMATION, LOSS OF PRIVACY, FAILURE TO MEET ANY DUTY INCLUDING WITHOUT LIMITATION OF GOOD FAITH OR OF REASONABLE CARE, NEGLIGENCE, OR OTHERWISE, REGARDLESS OF THE FORESEEABILITY OF THOSE DAMAGES OR OF ANY ADVICE OR NOTICE GIVEN TO COMPANY OR ITS LICENSORS AND SUPPLIERS ARISING OUT OF OR IN CONNECTION WITH DISTRIBUTOR'S USE OR SALE OF THE PRODUCTS OR SERVICES. THIS LIMITATION SHALL APPLY REGARDLESS OF WHETHER THE DAMAGES ARISE OUT OF BREACH

OF CONTRACT, TORT, OR ANY OTHER LEGAL THEORY OR FORM OF ACTION. ADDITIONALLY, THE MAXIMUM LIABILITY OF COMPANY AND ITS LICENSORS AND SUPPLIERS SHALL, UNDER ALL CIRCUMSTANCES, BE LIMITED TO   THE AGGREGATE OF ALL AMOUNTS RECEIVED BY COMPANY FROM DISTRIBUTOR HEREUNDER DURING THE SIX MONTHS PRECEDING THE INCIDENT OR INCIDENTS GIVING RISE TO SUCH LIABILITY. DISTRIBUTOR AGREES THAT THIS   LIMITATION OF LIABILITY REPRESENTS A REASONABLE ALLOCATION OF RISK AND IS A FUNDAMENTAL ELEMENT OF THE BASIS OF THE BARGAIN BETWEEN COMPANY AND DISTRIBUTOR. THE PRODUCTS AND SERVICES WOULD NOT BE PROVIDED WITHOUT SUCH LIMITATIONS.

12) **Miscellaneous**.

a)  <u>Choice of Law and Forum</u>. This Agreement, together with any order placed thereunder, shall be treated as though this Agreement were executed and performed in West Palm Beach, Florida and shall be governed and construed in accordance with the laws of the State of Florida without regard to conflict of law principles. The Parties agree that any claim or dispute arising under or related to this Agreement must be brought and adjudicated exclusively in the state and federal courts located in Palm Beach County, Florida, and the Parties, and each of them, submit to the personal jurisdiction of said courts for the purpose of litigating all such claims or disputes.

b)  <u>Notices</u>. All communications and notices in connection with this Agreement will be deemed received after: (a) three (3) days after deposit in the U.S. mail, postage prepaid, certified or registered, return receipt requested; or (b) one (1) day after delivery by overnight courier service, charges prepaid to the respective addresses set forth on the Order or to such other addresses as either party may designate by notice in accordance with this Agreement.

c)  <u>Waiver</u>. The failure of either Party to insist upon or enforce strict performance by the other Party of any provision of this Agreement or to exercise any right under this Agreement will not be construed as a waiver or relinquishment to any extent of such Party's right to assert or rely upon any provision or right in that or any other instance.

d)  <u>Successors; Assignment</u>. This Agreement will be binding upon, inure to the benefit of, and be enforceable by the Parties hereto and their respective successors and assigns. Except in connection with a merger, acquisition, or sale of all or substantially all of a Party's assets related to this Agreement, neither party may assign this Agreement and its rights and obligations hereunder, and any attempted assignment in contravention of this provision shall be null and void and of no force or effect.

e)  <u>Entire Agreement</u>. This Agreement, together with any orders placed thereunder and any other exhibits or attachments, constitutes the entire agreement between the Parties and supersedes all prior agreements or understandings between the Parties whether written or oral, and may not be altered, varied, revised, or amended except by a writing signed by both Parties.

f)  <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

g)  <u>Headings</u>. All headings are for convenience only and shall not affect the meaning of any provision of this Agreement.

h)  <u>Severability</u>. If for any reason a court of competent jurisdiction finds any provision or portion of this Agreement to be unenforceable, that provision of the Agreement will be enforced to the

maximum extent permissible so as to affect the intent of the parties, and the remainder of this Agreement will continue in full force and effect.

i) <u>Construction</u>. Each Party acknowledges and agrees that it has had the opportunity to seek the advice of independent legal counsel and has read and understood all of the terms and conditions of this Agreement. This Agreement shall not be construed against either Party by reason of its drafting.

j) <u>Force Majeure</u>. Neither Party shall be deemed in default of this Agreement to the extent that performance of its obligations or attempts to cure any breach are delayed or prevented by reason of any act of God, fire, natural disaster, accident, riots, acts of government, shortage of materials or supplies, or any other cause beyond the reasonable control of such party.

**IN WITNESS WHEREOF**, the Parties subscribed hereunto on the Effective Date first above written.

**FOR COMPANY**

Admire My Skin, LLC
340 Royal Poinciana Way 317-356
Palm Beach, FL 33480
United States

Signed:
Name:     Richard Romero
Position:     CEO
Date:     04/23/2020
Stamp:

**FOR DISTRIBUTOR**

PPW Korea
4030 N. Palm, #303
Fullerton, CA 92835
United States

Signed:
Name:     Jayden Park
Position:     C.E.O.
Date:     4/23/2020
Stamp:

## FIRST AMENDMENT TO DIGITAL BEAUTY GROUP LLC
## AUTHORIZED DISTRIBUTOR TERMS OF SALE

This First Amendment to Digital Beauty Group LLC Authorized Distributor Terms of Sale (the "**Amendment**") is effective as of May 1, 2020 (the "**Effective Date**") by and between, on the one hand, Digital Beauty Group LLC ("**Company**") located 340 Royal Poinciana Way 317-356, Palm Beach, FL 33480 and, on the other hand, PPW Korea ("**Distributor**") located at 4030 N. Palm St., #303, Fullerton, CA 92835.  Company and Distributor are each referred to herein individually as a "**Party**" and collectively as the "**Parties**."

1. **Recitals.**

   a. Company is engaged in the business of selling branded skincare and beauty products (the "**Products**"), as defined in Paragraph 1 of the Distributor Agreement.

   b. Company and Distributor have entered into a written agreement entitled the Digital Beauty Group LLC Authorized Distributor Terms of Sale (the "**Distributor Agreement**"), wherein Company appointed Distributor as an authorized distributor of the Products within the "**Territory**" designated in the Distributor Agreement.

   c. Since signing the Distributor Agreement, the Parties have discovered that the Territory was not properly defined in Section 2(c) of the Distributor Agreement as a result of an editing error. Specifically, the Territory was defined as "current and future Topiderm white label sales customers." Topiderm is an unrelated distributor of Company's Products and this language was inadvertently left in the Agreement when Company used the Topiderm distributor agreement as a template for the Distributor Agreement between the Parties. At all relevant times, Distributor's authorized Territory has been and is South Korea.

   d. Since signing the Distributor Agreement, the Company has agreed to make Distributor the exclusive distributor of the Products within the Territories listed in section 1f.

   e. Company and Distributor now desire to amend the Distributor Agreement to (i) correct the definition of "Territory" in Section 2(c) of the Distributor Agreement, and (ii) to grant exclusivity to Distributor within the Territories listed in section 1f.

   f. Armenia, Azerbaijan, Bahrain, Bangladesh, Bhutan, Brunei, China, Cambodia, Cyprus, Georgia, Hong Kong, India, Indonesia, Iran, Iraq, Israel, Japan, Jordan, Kazakstan, Kuwait, Kyrgyzstan, Laos, Lebanon, Malaysia, Mongolia, Myanmar, Nepal, Oman, Pakistan, Philippines, Qatar, Saudi Arabia, Singapore, Sri Lanka, Taiwan, Tadzhikistan, Thailand, Turkey, Turkmenistan, United Arb Emirates, Uzbekistan,Vietnam,Yemen

   g. Now, therefore, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Company and Distributor, intending to be legally bound hereby, agree as follows:

2. **Amendments.** The Parties hereby amend the Distributor Agreement as follows:

   a. Section 2(a)(i) of the Distributor Agreement is removed in its entirety and replaced with the following language:

    i)       <u>Exclusivity</u> – As of the date of the First Amendment, Company appoints Distributor as its exclusive distributor within the Territory of South Korea. Such exclusivity shall be revocable or terminable upon thirty (30) days' written notice per the terms of Section 8 of this Agreement.

  b.  Section 2(c) of the Distributor Agreement is removed in its entirety and replaced with the following language, which amendment shall be retroactive to the effective date of the Distributor Agreement:

    c)      <u>Territory</u>. The authorized sales territory of Distributor under this Agreement (the "**Territory**") shall be customers located within the country of South Korea.

3.  **<u>Conflict Resolution.</u>** In the event of any conflict between this Amendment and the Distributor Agreement, this Amendment shall govern as to the matters stated herein.

**IN WITNESS WHEREOF**, the Parties subscribed hereunto on the Effective Date first above written.

**FOR COMPANY**                                        **FOR DISTRIBUTOR**

Digital Beauty Group LLC                          PPW Korea
340 Royal Poinciana Way 317-356            4030 N. Palm, #303
Palm Beach, FL 33480                              Fullerton, CA 92835
United States                                            United States

Signed:                                                    Signed:
Name:     Richard Romero                       Name:     Jayden Park
Position:  CEO                                        Position:  C.E.O.
Date:      05/20/20                                   Date:        05/20/2020

【별지 제41호서식】

Registered No.    2020 - 2399

# NOTARIAL CERTIFICATE

## LAWFIRM LOGIC

#1001.Lotte Castel Bd. GondeokDong MaPoGu, Seoul, Korea

TEL : 02)567-2316 FAX : 02)568-3439

서울 마포구 마포대로 109
롯데캐슬 제오동 1001호        공증인가  법무법인 로직        TEL:02)567-2316
                                                         FAX:02)568-3439

Exhibit B

## YEBONG International Corp.

# YEBONG
### International Corp.



**Address:**

310, Gangnam-daero, Gangnam-gu, (#1210, Union Center, Yeoksam-dong), Seoul, Korea

**Chief of Agent:** KIM, YOON OH, General manger

**Re:** Affairs Concerning the Impossibility of a KFDA Registration and Import Permits on Products of AMS (Admire My Skin)

**To TERATECH KOREA CO., LTD**

Yebong International Corporation has been in businesses for import and distribution of medical supplies and functional cosmetics, and for agency for a KFDA certification and permits from the Korea government since 1995.

We regret to notify you of the agency service should quit due to several deficiencies and serious illegal document for sources from your company. For requested information for the KFDA registration, certification and permit of import for Admire My Skin products (hereinafter referred to as "AMS", its product name) of Digital Beauty Group, LLC.

1. We are blocked to apply for the KFDA certification with the Certificate of Free Sale for AMS mailed by DHL from the U.S. because it was examined as document forgery by the KFDA. As a result, your company for the registration of AMS to the KFDA has been blocked to submit any documents, which was discovered as results of our investigation.
   - Refer to Exhibit 1(Attachment 1)

1.1 The Document No. of Certificate of Free Sale that designated PPW Korea as an importer,

issued by the Chamber of Florida Commerce is D20-0714-01-01 and its issue date is Jun. 9, 2020 in the U.S. time.

1.2 Notwithstanding the importer has been changed to TERATECH Korea Co., LTD on the said document, the same Document No. (D20-0714-01-01) and date specified as the previous document was issued to a different entity; thus, the document was obviously forged.

2. There is discrepancy in two different expiration dates specified on the container and the box for the container of Ultra Potent Brightening Serum 2 % Hydroquinone provided to your company by AMS. In addition, AMS Citrus Glow Drops has no expiration date on the container itself.

It is illegalized to take steps for distribution permit for the products without manufacturing Number or Use-By Date which are matters to be stated on packages of cosmetics, or for the products with two different expiration dates.
- Refer to Exhibit 2 of Photos of Products (Attachment 2)

<Refer to Cosmetics Act of Republic of Korea>

Article 10 (Matters to be Stated on Packages of Cosmetics)

(1) Each of the following matters shall be stated and labeled on the primary or secondary package of cosmetics, as prescribed by the Ordinance of the Prime Minister: Provided, That in cases of packages prescribed by Ordinance of the Prime Minister including packages of cosmetics with a small quantity of contents, matters other than the name of a cosmetic, the trade name of the responsible cosmetic distributor and custom cosmetic seller, the price, the manufacturing number and the use-by date (where the best-before date after opening is stated, the manufacturing date shall also be stated; hereafter the same shall apply in this Article) shall not be stated and labeled thereon: <Amended by Act No. 11690, Mar. 23, 2013; Act No. 14027, Feb. 3, 2016; Act No. 15488, Mar. 13, 2018>

(2) Notwithstanding the main sentence of paragraph (1), the following matters shall be labeled on the primary package: <Amended by Act No. 15488, Mar. 13, 2018>

1. Name of the cosmetic;

NOT A CERTIFIED COPY

| 2. | Trade name of the business operator; |
| 3. | Manufacturing number; |
| 4. | Use-by date and best-before date after opening. |

3. We are banned to proceed with the critical discrepancy for the KFDA Certification and import permit due to documents provided by AMS from your company.

4. Therefore, I notify that the paid expenses for agency fees will not be refunded due to your company's irreversible faults whoever the sources were provided.

5. Unfortunately, your company will not be allowed to take the steps for the KFDA certification and import permit for AMS because the KFDA registered TERATEC USA as non-authenticate company.

Sincerely,

KIM, CHANG WOO
Representative Director,
YEBONG International Corp.

Jul. 16, 2020



**FLORIDA CHAMBER of Commerce**

JUNE 9, 2020

### CERTIFICATE OF FREE SALE



D20-0609-01-1

To Whom It May Concern:

I the undersigned, at the Florida Chamber of Commerce International Trade Office which is located at 136 S Bronough Street, Tallahassee, Florida, United States of America.

1. To the best of my knowledge and belief, Digital Beauty Group, LLC is a corporation organized and existing under the laws of Florida, United States, with its principal place of business at 340 Royal Poinciana Way, 317-356, Palm Beach, 33480.

2. To the best of my knowledge and belief, their manufactured or distributed products listed below are available for free sale in the State of Florida and distributed generally throughout the United States. To the best of my knowledge, there is no prohibition against export of these products into the country of South Korea Imported by TERATECH KOREA CO., LTD.

- Admire My Skin Citrus Glow Drops
- Admire My Skin Ultra Potent Brightening Serum
- Admire My Skin Ultra Potent Retinoid Cream
- Admire My Skin Intense Hydration Collagen Cream

3. The above statements are based solely upon information supplied by Digital Beauty Group, LLC.

4. Dated this 9th of June, 2020.

As a matter of policy, the Florida Chamber of Commerce, while assisting in promoting business, does not endorse any particular products and this certificate should not be interpreted as a guarantee, explicit or implied, for any of the products of the manufacturer, neither should it be used for propaganda, advertising or similar purposes.

STATE OF FLORIDA
COUNTY OF LEON

Sworn to and subscribed before me by means of physical presence this 9th of June, 2020

Personally Known [ ✓ ]

**MICHELLE MINER**
State of Florida-Notary Public
Commission # GG 202143
My Commission Expires
April 01, 2022

Donna K. Nieschwietz
Strategic & Special Projects Manager,
Florida Chamber of Commerce



**FLORIDA CHAMBER** of Commerce

JUNE 9, 2020

## CERTIFICATE OF FREE SALE

D20-0609-01-1

To Whom It May Concern:

I the undersigned, at the Florida Chamber of Commerce International Trade Office which is located at 136 S Bronough Street, Tallahassee, Florida, United States of America.

1. To the best of my knowledge and belief, **Digital Beauty Group, LLC** is a corporation organized and existing under the laws of Florida, United States, with its principal place of business at 340 Royal Poinciana Way, 317-356, Palm Beach, 33480.

2. To the best of my knowledge and belief, their manufactured or distributed products listed below are available for free sale in the State of Florida and distributed generally throughout the United States. To the best of my knowledge, there is no prohibition against export of these products into the country of South Korea. Imported by PPWKOREA CO., LTD.

   Admire My Skin Citrus Glow Drops
   Admire My Skin Ultra Potent Brightening Serum
   Admire My Skin Clinically Effective Retinoid Cream
   Admire My Skin Intense Hydration Collagen Cream

3. The above statements are based solely upon information supplied by **Digital Beauty Group, LLC.**

4. Dated this 9th of June, 2020.

As a matter of policy, the Florida Chamber of Commerce, while assisting in promoting business, does not endorse any particular products and this certificate should not be interpreted as a guarantee, explicit or implied, for any of the products of the manufacturer, neither should it be used for propaganda, advertising or similar purposes.

STATE OF FLORIDA
COUNTY OF LEON

Sworn to and subscribed before me by means of physical presence this 9th of June, 2020

Personally Known [ ✓ ]

MICHELLE MINER
State of Florida-Notary Public
Commission # GG 202143
My Commission Expires
April 01, 2322

Donna K. Nieschwietz
Strategic & Special Projects Manager
Florida Chamber of Commerce

NOT A CERTIFIED COPY

# Ultra Potent Brightening Serum



# Citrus Glow Drops



# ㈜예봉인터내셔날

# YEBONG
## International Corp.

서울특별시 강남구 강남대로 310(역삼동, 유니온센터 1210호)

담당자 : 김윤오 부장

수신 : 테라테크코리아 담당자 귀하

제목 : AMS(Admire My Skin) 제품에 대한 KFDA 등록과 수입허가 진행 불가에 관한 건

25년간 역사와 노하우로 의약용품,기능성 화장품 수입 유통,KFDA인증 대행,직수입, 수입대행, 수입 허가대행 등의 업무를 하고 있는 예봉 인터내셔날(주)입니다.

귀사가 Digital Beauty Group, LLC(이하 제품명:Admire My skin이라 칭한다)의 제품에 대한 KFDA 인증 및 수입 허가를 위해 당사에 요청한 자료가 아래와 같이 문제가 발생하여 본 정식공문을 발송합니다.

-아 래-

1.귀사에서 미국의 Admire My Skin 을 통해 KFDA 에 등록을 위해 제공 받은 서류(Certificate of Free Sale 는 당사에서 확인한 결과 위조된 정부 서류로 차단이 되어 KFDA에 서류 신청을 할 수가 없습니다.

증빙자료(첨부자료 1)

1-1.Certificate of Free Sale 가 PPW Korea로 수입 업자로 Florida Chamber of Commerce 에서 받은 서류 번호는 D20-0714-01-01 로 미국 날짜 기준 2020년 6월 9일 날 발행 됨.

1-2.동일한 서류가 수입업자가 Teratech Korea 로 바뀌었음에도 불구하고 이전 서류에 명시된 동일한 서류 번호 (D20-0714-01-01) 와 날짜가 명시된 것은 명백한 위조임

2.귀사에서 Admire My Skin으로부터 제공받은 제품 Ultra Poten Brightening Serum 2% . Hydroquinone 는 용기와 용기를 담고 있는 박스에 유통기한이 서로 다르게 기재되어 있습니다. 또한 Citrus Glow Drops 의 제품은 아에 용기 자체에 유통기한이 없습니다.

화장품 관련 필수기재사항인 제조번호 와 사용기한이 제품에 기재되어 있지 않은 제품과 유통기 한이 다르게 기재되어 있는 제품과 관련하여 본 유통 허가에 대해 진행 할 수가 없습니다.

제품 사진 (첨부자료 2)


<한국 화장품 법 참조>

한국 화장품법에 의거한

제10조(화장품의 기재사항) ① 화장품의 1차 포장 또는 2차 포장에는 총리령으로 정하는 바에 따라 다음 각 호의 사항을 기재 · 표시하여야 한다. 다만, 내용량이 소량인 화장품의 포장 등 총리령으로 정하는 포장에는 화장품의 명칭, 화장품책임판매업자 및 맞춤형화장품판매업자의 상호, 가격, 제조번호와 사용기한 또는 개봉 후 사용기간(개봉 후 사용기간을 기재할 경우에는 제조연월일을 병행 표기하여야 한다. 이하 이 조에서 같다)만을 기재 · 표시할 수 있다. <개정 2013. 3. 23., 2016. 2. 3., 2018. 3. 13.>


② 제1항 각 호 외의 부분 본문에도 불구하고 다음 각 호의 사항은 1차 포장에 표시하여야 한다. <개정 2018. 3. 13.>

1. 화장품의 명칭

NOT A CERTIFIED COPY

2. 영업자의 상호

3. 제조번호

4. 사용기한 또는 개봉 후 사용기간

3.귀사에서 Admire My Skin으로부터 제공받은 서류로 인해 당사는 더 이상 KFDA 인증 및 수입 허가 관련 사항을 진행 할 수 없음을 알려드립니다.

4.따라서 귀사의 귀책사유로 당사에 지급한 허가 대행 비용을 반환 할 수 없음을 알려드립니다.

5.위 내용 외에 법적으로 문제가 되어서 KFDA관련 임무를 진행하는 당사를 제외한 다른 업체로도 본 문서를 통해 수입 허가 및 인증 관련이 허가 되지 않음을 알려드립니다.

귀사의 무궁한 발전을 기원 합니다.

2020년 7월 16일

㈜예봉인터내셔날 대표이사 김창우

NOT A CERTIFIED COPY



**FLORIDA CHAMBER** of Commerce

JUNE 9, 2020

## CERTIFICATE OF FREE SALE

D20-0609-01-1

To Whom It May Concern:

I the undersigned, at the Florida Chamber of Commerce International Trade Office which is located at 136 S Bronough Street, Tallahassee, Florida, United States of America.

1. To the best of my knowledge and belief, **Digital Beauty Group, LLC** is a corporation organized and existing under the laws of Florida, United States, with its principal place of business at 340 Royal Poinciana Way, 317-356, Palm Beach, 33480.

2. To the best of my knowledge and belief, their manufactured or distributed products listed below are available for free sale in the State of Florida and distributed generally throughout the United States. To the best of my knowledge, there is no prohibition against export of these products into the country of South Korea imported by TERATECH KOREA CO., LTD.

**Admire My Skin Citrus Glow Drops**
**Admire My Skin Ultra Potent Brightening Serum**
**Admire My Skin Ultra Potent Retinoid Cream**
**Admire My Skin Intense Hydration Collagen Cream**

3. The above statements are based solely upon information supplied by **Digital Beauty Group, LLC.**

4. Dated this 9th day of June, 2020.

As a matter of policy, the Florida Chamber of Commerce, while assisting in promoting business, does not endorse any particular products and this certificate should not be interpreted as a guarantee, explicit or implied, for any of the products of the manufacturer, neither should it be used for propaganda/advertising or similar purposes.



MICHELLE MINER
State of Florida-Notary Public
Commission # GG 202143
My Commission Expires
April 01, 2022

STATE OF FLORIDA
COUNTY OF LEON

Sworn to and subscribed before me by means of physical presence this 9th of June, 2020

Donna K. Nieselwetz
Strategic & Special Projects Manager,
Florida Chamber of Commerce

Personally Known [ √ ]

NOT A CERTIFIED COPY

[ Appendix 2 ]



JUNE 9, 2020

### CERTIFICATE OF FREE SALE

D20-0809-01-1

To Whom It May Concern:

I the undersigned, at the Florida Chamber of Commerce International Trade Office which is located at 136 S Bronough Street, Tallahassee, Florida, United States of America.

1. To the best of my knowledge and belief, **Digital Beauty Group, LLC** is a corporation organized and existing under the laws of Florida, United States, with its principal place of business at **340 Royal Poinciana Way, 317-356, Palm Beach, 33480.**

2. To the best of my knowledge and belief, their manufactured or distributed products listed below are available for free sale in the State of Florida and distributed generally throughout the United States. To the best of my knowledge, there is no prohibition against export of these products into the country of **South Korea. Imported by PPWKOREA CO., LTD.**

    **Admire My Skin Citrus Glow Drops**
    **Admire My Skin Ultra Potent Brightening Serum**
    **Admire My Skin Clinically Effective Retinol Cream**
    **Admire My Skin Intense Hydration Collagen Cream**

3. The above statements are based solely upon information supplied by **Digital Beauty Group, LLC.**

4. Dated this 9th of June, 2020.

As a matter of policy, the Florida Chamber of Commerce, while assisting in promoting business, does not endorse any particular products and this certificate should not be interpreted as a guarantee, explicit or implied, for any of the products of the manufacturer, neither should it be used for propaganda, advertising or similar purposes.

STATE OF FLORIDA
COUNTY OF LEON

MICHELLE MINER
State of Florida Notary Public
Commission # GG 202143
My Commission Expires
April 01, 2022

Sworn to and subscribed before me by means of physical presence this 9th of June, 2020

Personally Known [ ✓ ]

Donna K. Nieschwietz
Strategic & Special Projects Manager
Florida Chamber of Commerce

[Appendix 2]

# # Ultra Potent Brightening Serum



# # Citrus Glow Drops



| | |
|---|---|
| 위 번역문은 원문과 상위없음을 서약<br>합니다. | I swear that the attached translation is<br>true to the original. |
| 2020년 12월 16일 | Dec. 16, 2020 |
| 번역인  신 성기  | Signature  Shinn, Sung Kee |

등부  2020 년  제 2399호

**인  증**

위 신성기 ――――――――――― 는
본 공증인의 면전에서 위 번역문이 원
문과 상위없음을 확인하고  서명날인
하였다.

――――――――――――――――――
――――――――――――――――――

2020년 12월 16일
이 사무소에서 위 인증한다.

공증
사무소  **공증인가 법무법인 로직**

소 속  서울서부지방검찰청
소재지표시
서울 마포구 마포대로 109
롯데캐슬 제오동 1001호

공증담당변호사

Registered No.  2020-2399

## Notarial Certificate

SHINN SUNG KEE ――――― personally
appeared before me, confirmed that
the attached translation is true to the
original and subscribed his(her) name.

――――――――――――――――――
――――――――――――――――――

This is hereby attested on this
16th day of Dec. 2020 at this office.

# LAWFIRM LOGIC

Seoul Western District Prosecutor's Office
# 1001,Lotte Castel Bd. GondeokDong
MaPoGu, Seoul, Korea

Signature of the Notary Public

**Kim, Kwang Soo**
This office has been authorized by the
Minister of Justice, the Republic of
Korea, to act as Notary Public Since
7, Feb. 2020 Under Law No.121.

서울 마포구 마포대로 109
롯데캐슬 제오동 1001호

공증인가  **법무법인 로직**

TEL:02)567-2310
FAX:02)568-3439

NOT A CERTIFIED COPY

## APOSTILLE

(Convention de La Haye du 5 octobre 1961)

1. Country : Republic of Korea

   This public document

2. has been signed by    KIM, KWANG SOO

3. acting in the capacity of  Notary Public

4. bears the seal/stamp of  LAWFIRM LOGIC

### Certified

5. at    Seoul              6.  16/12/2020

7. by    The Ministry of Justice

8. No.  XXA2020C6VK3BS

9. Seal/ stamp                 10. Signature

                               Kim Jae-Il

                          Kim Jae-Il

NOT A CERTIFIED COPY

Filing # 122241735 E-Filed 03/01/2021 01:30:22 PM

IN THE CIRCUIT COURT FOR THE
FIFTEENTH JUDICIAL CIRCUIT IN AND
FOR PALM BEACH COUNTY, FLORIDA

TERATECH USA, INC.,

     Plaintiff,

v.                           **CASE NO.:**

DIGITAL BEAUTY GROUP, LLC,

     Defendant.

_____/

### SUMMONS

**THE STATE OF FLORIDA**
To all and singular the sheriffs of the State:

     YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the COMPLAINT, in this action upon the Defendant:

Digital Beauty Group LLC
Registered Agent: Richard C. Romero
340 Royal Poinciana Way
Suite 317-356
Palm Beach, FL 33480

     The Defendant is hereby required to serve written defenses to the Complaint on: Min H. So, Esquire, Plaintiff's attorney, whose address is Min H. So Law Firm, P.A., 5401 S. Kirkman Road, Orlando, Florida 32819, (407) 370-7140 within 20 days after service of this Summons on that Defendant, exclusive of the day of service, and to file the original of the defenses with the Clerk of Circuit Court either before service on Plaintiff's attorney or immediately thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief demanded in the Complaint.

                              Mar 04 2021
     DATED this March _____, 2020.

                            Clerk of the Circuit Court

                            BY: *Blake Smith*
                               As Deputy Clerk

(COURT SEAL)                              BLAKE SMITH

NOT CERTIFIED COPY